# 𝔍n the United States Bankruptcy Court
# for the
# Southern District of Georgia
## Savannah Division

FILED
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
By DReese at 11:21 am, Jul 05, 2018

In re:

Latrice Sherrod,

     Debtor.

Chapter 13

Number 17-40434-EJC

## OPINION ON CHAPTER 13 TRUSTEE'S MOTION TO DISMISS CHAPTER 13 CASE WITH PREJUDICE

Pending before the Court is the Chapter 13 Trustee's Motion to Dismiss Chapter 13 Case with Prejudice. (Dckt. 52). The Chapter 13 Trustee alleges that Latrice Sherrod (the "Debtor") falsified a letter authorizing her to incur debt in connection with the purchase of a motor vehicle. This matter came on for hearing on April 30, 2018. Having considered the evidence and testimony from that hearing, the Court enters these Findings of Fact and Conclusions of Law.

## I. JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(1).

## II. FINDINGS OF FACT

On March 31, 2017, the Debtor filed a Chapter 13 petition and plan. (Dckt. 1,

2). On July 25, 2017, the Debtor amended her plan to provide for the surrender of a 2010 Mercedes-Benz automobile to Santander Consumer. (Dckt. 27, p. 2). On September 2, 2017, the Debtor's counsel, Shari Lee Smith ("Smith"), wrote to the Chapter 13 Trustee seeking permission to incur debt to finance a replacement vehicle. (Dckt. 52-1, p. 1, Trustee's Ex. "A"). Attached to the letter written by Smith was a form available on the Chapter 13 Trustee's website to provide the information regarding vehicle loans.[1] (Dckt. 52-1, p. 2, "Form to Complete with Your Lender if You Want a Car Loan"). The Debtor had investigated available terms from Coastal Chevrolet and was advised that she could purchase a 2017 Chevrolet Sonic through Santander Consumer for $17,990.00, at an annual rate of interest of 18.99% and monthly payments of approximately $450.00. (Dckt. 52-1, p. 1).

On October 11, 2017, the Chapter 13 Trustee sent a letter to Smith and filed the same with the Court (dckt. 42) authorizing the Debtor to incur debt to purchase a vehicle at an annual rate of interest of 18.99% and monthly payments of approximately $450.00. A copy of that letter (admitted as Trustee's Ex. "B"), which was mailed to the Debtor, is appended in its entirety to this Opinion. Importantly, that letter was written on the Chapter 13 Trustee's normal letterhead.

The Debtor's amended Chapter 13 plan was confirmed on October 27, 2017. (Dckt. 43). The Order Confirming Plan provided that the "Debtor(s) shall not incur any

---

[1] Also attached to Smith's letter were a purchase order for a 2017 Chevrolet Sonic, the Debtor's Schedule I, and the Debtor's Schedule J. (Dckt. 52-1, pp. 3-7, Trustee's Ex. "A").

indebtedness without the approval of the Court or the Trustee."[2] *Id.* at p. 2.

On February 14, 2018, the Chapter 13 Trustee filed the instant Motion to Dismiss Chapter 13 Case with Prejudice (dckt. 52) and alleged the following:

. . .

4. On January 31, 2018 the Trustee was contacted by Cameron Edelen from Prestige Financial Services, Inc., who wanted to verify that the Trustee had granted the Debtor permission to obtain a vehicle loan. Cameron Edelen provided the Trustee with a copy of an approval letter which was different from the letter the Trustee sent on October 11, 2017. The letter provided to Prestige was dated December 15, 2017, purportedly sent by the Trustee and addressed to the Debtor's attorney. This letter indicated that it was the Trustee's "understanding that the monthly payment will be approximately $450.00 per month at an interest rate of 21.99%." A copy of the letter that Prestige received is attached as Exhibit "C". The Trustee did not issue the letter dated December 15, 2017.

5. On February 2, 2018 the Trustee was contacted by Alex Elliot, Finance Director with I-95 Toyota & Scion of Brunswick, to verify the approval from the Trustee and attaching the same letter that Prestige received. See Exhibit "D". On the same day, the Debtor's Attorney submitted a copy of a Retail Installment Sale Contract ("Contract") to the Trustee's office. A redacted copy of the Contract is attached as Exhibit "E". The Contract indicated that the Debtor purchased a 2012 Kia Optima at an annual percentage rate of 21.99% and a monthly payment of $280.21. According to the Contract, the vehicle had been purchased from I-95 Toyota & Scion of Brunswick, with Prestige Financial Service, Inc. listed as the lender.

6. Upon information and belief, the Debtor and/or a person acting under her direction or control submitted a forged approval letter in order to secure the

---

[2] Pursuant to General Order Number 2010-2, "the case trustee is authorized, without further order of this Court, to grant permission to the debtor to enter into agreements . . . to incur debt as set forth in 11 U.S.C. § 1305. Nothing in this General Order is to prevent the trustee from denying a request from the debtor . . . to incur debt, or prevent the debtor from filing a motion seeking Court approval of a debtor's request . . . to incur debt. Applications depicting the approval of the chapter 13 trustee to so modify or to incur debt may be filed with the Clerk's office in accordance with the Court's filing procedures." General Order Number 2010-2 ("Order Permitting Chapter 13 Trustee to Approve Real Estate Loan Modification and the Incurring of Debt").

AO 72A
(Rev. 8/82)

3

> purchase and finance of a motor vehicle. Moreover, the Debtor willfully obtained and incurred post-petition debt from a lender and on terms that had not been authorized by the Trustee or by Court order. This conduct violated the terms of the order on confirmation.

(Dckt. 51, pp. 1-2) (emphasis omitted). The Chapter 13 Trustee seeks dismissal of this case for cause, and with prejudice, pursuant to 11 U.S.C. § 1307(c).

The Chapter 13 Trustee's Motion to Dismiss was scheduled for hearing on March 13, 2018. On March 9, 2018, Smith filed a Motion to Withdraw as Debtor's Counsel (dckt. 55), and that motion was also scheduled for hearing on March 13, 2018. (Dckt. 56). When the matter came on for hearing on March 13, 2018, the Debtor consented to Smith's withdrawal. The Court announced that the hearing on the Motion to Dismiss would be rescheduled in light of Smith's withdrawal and advised the Debtor that she needed to act promptly if she intended to hire other counsel and that in any continued hearing she may be called upon to testify as to whether she prepared the allegedly forged document.

The continued hearing was set for April 30, 2018. At the hearing, the Debtor appeared *pro se*, and Smith appeared as a witness. The Court heard testimony from both the Debtor and Smith, and the Chapter 13 Trustee's counsel, Jeff Narmore, also made certain representations to the Court as to the practices in the Chapter 13 Trustee's office.

The Debtor acknowledged familiarity with the initial request for authority to incur debt that Smith submitted to the Chapter 13 Trustee on her behalf in the letter of September 2, 2017. (Dckt. 52-1, p. 1, Trustee's Ex. "A"). She also acknowledged having received the Chapter 13 Trustee's letter of authorization dated October 11, 2017. (Dckt. 42). According to the Debtor, she returned to Coastal Chevrolet with this letter of authorization

from the Chapter 13 Trustee only to be told by the dealership that the required down payment had been increased from $1,500.00 to $2,500.00. At that point, the Debtor discontinued her negotiations with Coastal Chevrolet.

The Debtor continued to search for available financing from a dealership. Some time prior to January 22, 2018, the Debtor contacted I-95 Toyota & Scion of Brunswick and identified a 2012 Kia Optima automobile that she proposed to purchase. On January 22, 2018, the Debtor signed a Retail Installment Sale Contract to purchase the Kia Optima from I-95 Toyota & Scion of Brunswick through Prestige Financial Services, Inc. for $11,315.89, with a cash down payment of $1,000.00, an annual rate of interest of 21.99%, and monthly payments of $280.21. (Dckt. 52-5, Trustee's Ex. "E").

At some point,[3] the Debtor tendered to the dealership or the financing entity, or both, the Chapter 13 Trustee's authorization letter of October 11, 2017, but was advised that the authorization had expired by its terms 45 days after it was written.[4] Subsequently, the Debtor provided the dealership with a second authorization letter purportedly from the Chapter 13 Trustee dated December 15, 2017. (Dckt. 57-1, Trustee's Ex. "F"). It is this second letter, which was obviously fabricated, that led the Chapter 13 Trustee to file the instant Motion to Dismiss.

---

[3] The Debtor's testimony concerning the chronology of this transaction was confusing and contradictory. The Debtor initially testified that the dealership requested a new authorization letter one week before January 22, 2018, at which time she contacted Smith's office and received the December 15, 2017 letter. Later, however, the Debtor testified that she received this second letter *on* December 15, 2017.

[4] The October 11, 2017 letter states that "[t]he debtor must provide a SIGNED copy of the proof of purchase/installment contract to this office within 45 days from the date stated above." (Dckt. 42) (emphasis omitted).

The fictitious letter of December 15, 2017 (admitted as Trustee's Ex. "F"), is appended in its entirety to this Opinion. This letter has several interesting features. First, unlike the Chapter 13 Trustee's genuine letter of October 11, 2017, this letter has a markedly different letterhead, different spacing, and different left margin alignment. Second, the date of the letter, December 15, 2017, falls conveniently within the 45-day period preceding January 22, 2018, when the Debtor purchased the Kia Optima. Third, the letter purports to authorize the Debtor to purchase a vehicle at an annual rate of interest of 21.99%, as opposed to the 18.99% rate in the genuine letter of October 11, 2017.

The only real question in this case is this: who created this fictitious letter? Based on the evidence presented at the April 30, 2018 hearing, there are only five possibilities: (1) the Chapter 13 Trustee or someone in his office; (2) the car dealership, I-95 Toyota & Scion of Brunswick; (3) the financing company, Prestige Financial Services, Inc.; (4) the Debtor's former counsel, Smith, or someone in her office; or (5) the Debtor.

The Chapter 13 Trustee's office has confirmed to the Court's satisfaction that the fictitious letter was not prepared by the Chapter 13 Trustee or anyone in his office. It is the Chapter 13 Trustee's practice to file with the Court his letters authorizing debtors to incur debt. Only the original letter of October 11, 2017, was filed with the Court. (Dckt. 42). The Court finds that neither the Chapter 13 Trustee nor anyone in his office created the second, fictitious letter of authorization.

The Court also finds that neither the dealership nor the financing company prepared the fictitious letter. There was no evidence suggesting that either of these third

parties would have done so. Both contacted the Chapter 13 Trustee to inquire about the validity of the authorization letter provided by the Debtor, which they would not have done had they created the letter. This finding is bolstered by the fact that the Debtor claims the fictitious letter came from Smith's office, not from the dealership or from the financing company.

That leaves Smith and the Debtor as the only possible originators of the fictitious letter. Smith testified that neither she nor any of her three full-time employees prepared the fictitious letter of December 15, 2017.[5] However, in the Debtor's testimony and argument at the April 30, 2018 hearing, she alleged that she first received the letter in an email from Smith's office. If true, this would indicate that Smith's office created the letter.

The sequence of events described by the Debtor is confusing, to say the least. At the hearing, the Debtor tendered into evidence a *third* authorization letter, which she says Smith's office emailed to her at 12:49 p.m. on December 15, 2017.[6] (Debtor's Ex. "6"). Despite the Debtor's testimony that it was sent to her on December 15, 2017, this third letter is inexplicably dated October 11, 2017. In its content, this letter is identical to the Chapter 13 Trustee's genuine letter of October 11, 2017. However, this third letter contains the same indicia of forgery as the fictitious letter of December 15, 2017, namely the odd double spacing and left margin alignment. The Debtor testified that immediately upon receiving this

---

[5] Smith testified that her three employees have each worked in her office, off and on, for many years.

[6] No time stamp appears on this third letter. The only evidence that it was sent on December 15, 2017, at 12:49 p.m. is the Debtor's recollection.

third letter at 12:49 p.m., she notified Smith's office that the letter was the same as the October 11, 2017 letter and that the interest rate needed to be 21.99%, not 18.99%.[7] According to the Debtor, at 12:54 p.m. that same day, Smith's office allegedly emailed the fictitious letter dated December 15, 2017, which featured the 21.99% rate.

The Court heard additional testimony about this alleged email from Smith's office to the Debtor. On March 8, 2018, at 3:12 p.m., the Debtor sent Smith an email purporting to forward a prior email sent by Smith on December 15, 2017, at 12:54:35 p.m. (Trustee's Ex. "G"). In the alleged prior email from Smith to the Debtor, the fictitious letter of December 15, 2017, was supposedly attached as a .txt file. *Id.* Smith, however, testified that any attachment sent from her office would only be in the form of a .pdf file. Whereas the alleged email forwarded by the Debtor identifies the sender merely as "Shari Lee Smith," Smith testified that any email sent from her office would identify the sender as "Shari Lee Smith and Associates." Smith further testified that the day of the week would appear in the date reference, but no such day appears on the alleged email forwarded by the Debtor. According to Smith, emails from her office are always copied to a second office email address, but this feature is absent from the alleged email forwarded by the Debtor. At the hearing, Smith provided examples of genuine emails from her office, which corroborate her testimony and demonstrate that the alleged email was fabricated. (Trustee's Ex. "H" and "I"). Smith's testimony was credible, and the Court finds that neither she nor anyone connected with her law firm prepared the fictitious letter.

---

[7] Earlier at the same hearing, however, the Debtor testified that the interest rate needed to be changed *from* 21.99% *to* 18.99%.

By process of elimination, the Debtor is the only person who could have created the fictitious letter. Her testimony in her defense is unworthy of belief. Only she had the motive to forge the letter, as there is no logical reason for any other party to have falsified a letter authorizing her to obtain financing for the purchase of a motor vehicle. She testified that when the dealership discovered the fraudulent nature of the letter and contacted her, she voluntarily returned the Kia Optima. It is difficult to understand why the supposed *victim* of the forgery would not have protested when the dealership asked her to return the vehicle. She also was in *possession* of the fictitious letter, as evidenced by the fact that she was able to send a copy to Smith when requested. (Trustee's Ex. "G"). Indeed, the evidence shows that the Debtor fabricated the December 15, 2017 email allegedly sent by Smith in order to frame Smith's office for forging the letter.

## III. CONCLUSIONS OF LAW

"The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279 (1991)). Accordingly, the debtor's good faith, or lack thereof, is a recurring theme throughout the Bankruptcy Code, including the section governing dismissal of a Chapter 13 case for cause. Section 1307(c) of the Bankruptcy Code provides that a Chapter 13 case may be dismissed or converted "for cause." 11 U.S.C. § 1307(c). Section 1307 further provides a non-exclusive list of what constitutes "cause" for dismissal. Although bad faith, or a lack of good faith, is not included in this list, bad faith can constitute cause for dismissal under section 1307(c). *See Marrama*, 549 U.S.

at 373; *Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*, 719 F.3d 1253, 1263 (11th Cir. 2013); *Orcutt v. Crawford*, No. 8:10-CV-1925-T-17, 2011 WL 4382479 (Bankr. M.D. Fla. Sept. 20, 2011).

The Eleventh Circuit has held that when conducting a good faith analysis, bankruptcy courts should consider the facts and circumstances of the individual case. *Kitchens v. Georgia R.R. Bank and Trust Co. (In re Kitchens)*, 702 F.2d 885, 888-89 (11th Cir. 1983). The inquiry in *Kitchens* was guided by a non-exclusive list of fifteen factors. *In re Roberts*, No. 11-60690, 2013 WL 441378, at *2 (Bankr. S.D. Ga. Jan. 24, 2013) (Dalis, J.). "Notwithstanding the number and variety of possibly relevant factors, 'the easiest way to fail the good faith test . . . is for a debtor to misrepresent, lie or otherwise mislead the court.'" *Id.* (quoting *In re Thomas*, 443 B.R. 213, 218 (Bankr. N.D. Ga. 2010)). The burden of proof is on the moving party. *Staggs v. Kirk (In re Kirk)*, 548 B.R. 597, 604 (Bankr. S.D. Ga. 2016).

Here, the Debtor forged a letter purportedly from the Chapter 13 Trustee in order to obtain financing for the purchase of a motor vehicle. The car dealership and the financing company relied upon this fabrication, believing it had been issued by the Chapter 13 Trustee. In an ill-conceived attempt to blame her attorney for this obvious forgery, the Debtor fabricated an email and testified falsely at the April 30, 2018 hearing. The Debtor's bad-faith conduct is "an abuse of the provisions, purpose [and] spirit" of the Bankruptcy Code, and the Chapter 13 Trustee has carried his burden of establishing cause for dismissal under section 1307(c).

"Dismissal under § 1307(c) is a two-step process. Once the court has determined that cause to dismiss exists, it sill must decide what remedial action–what form of dismissal–should be taken." *Ellsworth v. Lifescape Med. Assoc. (In re Ellsworth)*, 455 B.R. 904, 922 (B.A.P. 9th Cir. 2011). "Whether to dismiss a case with prejudice is committed to the sound discretion of the court." *Wenegieme v. Macco*, 580 B.R. 17, 23-24 (Bankr. E.D.N.Y. 2018). "It is well-established that courts have discretion to bar re-filing of a bankruptcy action for periods of a year or longer . . . ." *Id.* at 24. Here, the Debtor's conduct was so egregious that the Court will dismiss this case with prejudice, barring refiling of a petition for a period of two years. A separate order will be entered consistent with this Opinion.

Dated at Savannah, Georgia, this 5th day of July, 2018.

_____
Edward J. Coleman, III, Chief Judge
United States Bankruptcy Court
Southern District of Georgia

Office of the Chapter 13 Trustee
Southern District Of Georgia
Savannah Division
O. Byron Meredith III
Trustee

| | |
|---|---|
| 33 Bull Street, Suite 415 (31401) | (912) 234-5052 |
| Post Office Box 10556 | (800) 292-2811 |
| Savannah, Georgia 31412 | Fax (912) 232-8824 |

October 11, 2017

Mrs. Shari L. Smith
586 W. Oglethorpe Hwy.
Hinesville, GA 31313

      RE:    Latrice Sherrod
                  Chapter 13 Case No. 17-40434-EJC

Dear Mrs. Smith:

      The request to incur debt submitted on behalf of the above referenced Chapter 13 debtor is approved. The debtor may purchase a vehicle. The payments are to be paid directly to the company that provides the financing for the vehicle. It is my understanding that the monthly payment will be approximately $450.00 per month at an interest rate of 18.99%.

      The debtor must provide a SIGNED copy of the proof of purchase/installment contract to this office within 45 days from the date stated above. If such proof is not provided, the Chapter 13 Trustee will move to modify the plan to increase the Trustee payment by $450.00 per month.

      Please contact me if we can be of additional assistance to you.

                                         Sincerely,

                                         <u>s/ O. Byron Meredith III</u>
                                         O. Byron Meredith III
                                         Georgia Bar # 002330
                                         P.O. Box 10556
                                         Savannah, GA 31412
                                         (912) 234-5052

cc:    Debtor

Office of the Chapter 13 Trustee

Southern District Of Georgia

Savannah Division

O. Byron Meredith III

Trustee


33 Bull Street, Suite 415 (31401) (912) 234-5052

Post Office Box 10556 (800) 292-2831

Savannah, Georgia 31412 Fax (912) 232-8824


December 15, 2017


Mrs. Shari L. Smith

586 W. Oglethorpe Hwy.

Hinesville, GA 31313


RE: Latrice Sherrod

Chapter 13 Case No. 17-40434-EJC


Dear Mrs. Smith:


The request to incur debt submitted on behalf of the above referenced Chapter 13 debtor is approved. The debtor may purchase a vehicle. The payments are to be paid directly to the company that provides the financing for the vehicle. It is my understanding that the monthly payment will be approximately $450.00 per month at an interest rate of 21.99%.

The debtor must provide a SIGNED copy of the proof of purchase/installment contract to this office within 45 days from the date stated above. If such proof is not provided, the Chapter 13 Trustee will move to modify the plan to increase the Trustee payment by $450.00 per month.


Please contact me if we can be of additional assistance to you.

Sincerely,

s/ O. Byron Meredith III

O. Byron Meredith III

Georgia Bar # 002330

P.O. Box 10556

Savannah, GA 31412

(912) 234-5052

cc: Debtor